**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Marvin L. Blackman,

Plaintiff,

v.

Talmud Torah of Minnesota,[1]

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1828 ADM/AJB

---

John O. Murrin, III, Esq., Murrin Metropolitan, Edina, MN, appeared on behalf of Plaintiff.

John J. McDonald, Jr., Esq., Meagher & Geer, Minneapolis, MN, appeared for and on behalf of Defendant Talmud Torah of Minnesota.

---

## I. INTRODUCTION

On September 21, 2001, the Motion for Summary Judgment [Doc. No. 14] of Defendant Talmud Torah of Minnesota ("Talmud") was argued before the undersigned United States District Judge. For the reasons set forth below, Talmud's Motion is granted.

## II. BACKGROUND

Plaintiff Marvin Blackman ("Blackman") was a teacher at Talmud, a supplementary Jewish school, from 1981 until the 1998-99 school year. When Blackman's teaching contract expired after the 1997-98 school year, Talmud opted not to offer a new full time contract, asserting that Blackman was no longer effective as a teacher. Talmud then offered Blackman a part-time contract for the 1998-99 school year, after which no further contracts were offered and Blackman's employment at

---

[1] While the Complaint was filed naming Talmud Torah of Minnesota as Defendant, the proper name of the school is The Talmud Torah of Minneapolis. Pl. Ex. 17.

12-5-01
12-5-01
DEPUTY CLERK

Talmud was terminated. Blackman alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03. Blackman also asserts a common law claim of defamation.

Decisions regarding hiring and firing of teachers at Talmud are made by the executive director, a position held during the relevant time period by Rabbi Avraham Ettedgui ("Ettedgui"). Ettedgui Dep. at 4, 10-11. At the time Blackman was not offered a new teaching contract, Blackman was 64 years old, and Ettedgui was 62 years old. Pl. Mem. at 5, Ettedgui Dep. at 154-155.

Talmud alleges that Blackman had problems communicating with younger students from the beginning of his employment in 1981. Lindeman Aff., Ex. C at 11. Blackman was moved from full time to part time status after his first year of teaching, but was again offered a full time contract the following year. This decision was based, in part, on Talmud's belief that in order to keep Mrs. Blackman employed as a teacher, Talmud also needed to employ Mr. Blackman. Id., Ex. B at 11-12, 17-18, 127, Ex. C at 38. Talmud asserts that it made accommodations to Blackman's teaching style, including assigning him more advanced, older students. Id., Ex. B at 18-19.

Talmud alleges that although Blackman's performance was a concern throughout his employment, more severe problems surfaced during the most recent years, as reflected by a general unwillingness of students to take Blackman's courses. Id., Ex. B at 20, 22-23, 48, 65. Talmud received requests from parents that their children not be placed in Blackman's classes. Lindeman Aff., Ex. B at 23, 65. Talmud alleges that Blackman frequently did not teach the classes that were assigned to him. Id. at 52, 69, 73. Talmud asserts that Blackman's performance deteriorated over his tenure at Talmud.

Talmud presents evidence that Blackman did not communicate well with his students, and that he was not using visual aids effectively. Id., Ex. B at 118, 120-121. Talmud alleges that Blackman made physical contact with students, exhibited poor classroom management skills, such as beginning to lecture without garnering the attention of his students, and failed to maintain discipline in his classroom. Id., Ex. B at 56, 125-126, 128, Ex. F. Talmud documents that Blackman was not coming to school on time, and not spending the required amount of time at the school. Id., Ex. B at 56, 128, Ex. E.

Blackman was reprimanded for lack of sensitivity when he refused to pronounce a student's name in the manner the student preferred because Blackman believed that the student was pronouncing his own name improperly. Id., Ex. C at 77, 79. Although Talmud tolerated similar difficulties throughout Blackman's employment, as well as "philosophical differences" between Blackman and Ettedgui, Talmud decided after the 1998-99 school year that Blackman was no longer effective as a teacher. Lindeman Aff., Ex. C at 31-33.

Blackman contends that he was fully qualified to perform his job effectively, and that he was meeting Talmud's expectations. Blackman presents evidence that he is an extremely learned, knowledgeable and respected scholar. Daniel Savitt, a past student, appreciated Blackman as a teacher in 1990-91, and he subsequently chose to study with Blackman to prepare him for high level Hebrew studies in Israel. Savitt Dep. at 7, 22-23. Eli Lifshen ("Lifshen") was hired to teach at Talmud beginning in the 1998-99 school year, and now teaches some of the classes Blackman formerly taught. Lifshen regards Blackman as a "brilliant scholar," and has relied on Blackman to answer questions about subject matter. Lifshen Dep. at 33, 41.

Blackman cites letters of recommendation on his behalf written by other Rabbis and teachers, and a thank you card from a satisfied parent. Blackman argues that these letters and comments praising him, and demonstrating that at least some of his students were very pleased with his performance as their teacher, establish that he was qualified for the Talmud position and that he was performing his job at a level that satisfied expectations.

Upon learning that he was not being offered another teaching contract, Blackman alleges he was terminated because he was too old to teach anymore. Blackman alleges that this age-based animus for his termination is revealed in the form of two statements made by Ettedgui, and, ironically, one made by himself. First, Blackman relates Ettedgui allegedly stated to him in October, 1998, that: "he is old and I'm old. Times have changed. You can't touch the children the same way as you did before." Lindeman Aff., Ex. C at 52. Second, in a May, 1999, board meeting with Ettedgui and the Talmud board of directors to discuss Blackman's employment, Ettedgui allegedly stated that: "things had changed. You know, things had changed. We can't speak to the children the same way." Id. at 101, 125. Third, Blackman testified that during the May, 1999, meeting he told those present that he was not "ready for pasture." Id. at 101.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

**B. Age Discrimination**

**i. Legal Standard**

The ADEA prohibits an employer from discriminating on the basis of a person's age, if such an individual is over 40 years old. See 29 U.S.C. § 631(a); Dammen v. Unimed Med. Ctr., 236 F.3d 978, 980 (8th Cir. 2001). The ADEA states in part that "[i]t shall be an unlawful employment practice for an employer [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish a claim under the ADEA, Blackman must show that Defendant intentionally discriminated against him. Ziegler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d 671, 675 (8th Cir. 1998).

Where a plaintiff relies on circumstantial, as opposed to direct, evidence of intentional discrimination, the Court applies the three-stage burden shifting approach developed by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973), and later refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).[2] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-

---

[2] Analysis of discrimination claims under the MHRA is the same as that under the ADEA. See Ziegler, 133 F.3d at 675 (using the same analysis for claims under the ADEA and the MHRA); see also Todd v. Ortho Biotech, Inc., 175 F.3d 595, 599 (8th Cir. 1999) (noting that Minnesota courts frequently look to federal cases when interpreting the MHRA).

7 (1993); Dammen, 236 F.3d at 980. Under this framework, the plaintiff bears the initial burden of presenting a prima facie case of discrimination. Dammen, 236 F.3d at 980. If a prima facie case is established, a legal presumption arises that the employer unlawfully discriminated against the plaintiff. Id. This rebuttable presumption shifts the burden[3] to the employer to produce evidence that the plaintiff was rejected (or someone else was preferred) for a "legitimate, nondiscriminatory reason." Id. If the employer articulates such a reason, the presumption disappears and the McDonnell Douglas framework becomes irrelevant. Id. The sole remaining issue is whether the employer discriminated. Id. The plaintiff then has an opportunity to prove, by preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

To establish a prima facie case of age discrimination, a plaintiff must demonstrate that: (1) he is within the protected class; (2) he was qualified to perform his job, or was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) nonmembers of his class (persons under 40 in the ADEA context) were not treated the same, or he was replaced by a person not in the protected class. See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999); Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000); Tatum v. Georgia Pacific Corp., 228 F.3d 926, 931 (8th Cir. 2000). There is no dispute that Blackman is over 40 years old and within the protected class, or that he suffered an adverse employment action. However, Blackman has failed to set forth evidence sufficient to demonstrate the other two required elements of his prima facie case.

---

[3] This framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff. Id.

**ii. Analysis**

In deciding whether Blackman has established a prima facie case of age discrimination, the first contested element is whether he was meeting the legitimate expectations of his employer. Talmud has identified multiple complaints regarding Blackman's performance, which became progressively worse over time. "[T]here is nothing inherently discriminatory in an employer choosing to rely on recent performance more heavily than past performance in deciding which employees to terminate . . . ." Brown v. McDonnell Douglas Corp., 113 F.3d 139, 142 (8th Cir. 1997) (internal citation omitted). Talmud also presents evidence that Blackman had various types of deficiencies regarding his in-class teaching style and behavior.[4]

Blackman contends that he was performing his job effectively and meeting Talmud's expectations. Blackman cites positive comments from former students,[5] letters of recommendation on his behalf written by other Rabbis and teachers, and a thank-you card from a satisfied parent, in support of his claim. Blackman argues that these letters and comments praising him as a scholar establish that he was qualified for the position he held at Talmud and that he was performing his job at a level that satisfied the expectations of Talmud.

Perhaps some of the difficulties encountered by the parties in this case are occasioned by the reality that scholarship and knowledge do not equate directly with teaching ability. As educator Horace Mann recognized, "a teacher who is attempting to teach without inspiring the pupil with a desire to learn is hammering on a cold iron."

---

[4] The detailed list of these problems is discussed above in section II, pages 2-3.

[5] See above, section II, pages 3-4.

All teachers affect their students in different ways, and with varying degrees of impact. That a teacher who was not performing up to the expectations of his employer may nevertheless be well-received by a few students and colleagues, is not telling. In assessing whether a teacher is meeting the reasonable expectations of his employer for purposes of establishing a prima facie case of age discrimination, a showing that some students and colleagues respected the teacher's performance is an insufficient basis on which to conclude that the teacher is necessarily qualified from the employer's point of view. The evidence Blackman puts forth to establish this element of the prima facie case of the McDonnell Douglas test is inadequate.

The next element required to be shown is that Blackman was replaced by a younger teacher. Blackman claims that he was replaced by Lifshen, who had observed Blackman's classes during his recruitment visit, and now teaches some of the courses Blackman previously taught. Blackman was terminated in March 1998, but subsequently his employment was extended for the 1998-1999 school year. Lifshen's first year teaching was the 1998-1999 school year. Blackman contends that Lifshen was hired to replace him because, if Blackman's employment had not been extended by an additional year, then Blackman would have left just as Lifshen began teaching. Talmud asserts that though Lifshen does teach one or two of the classes Blackman once taught, he also teaches many other classes, and was not hired to "replace" Blackman.

Blackman alleges that Lifshen was hired because "he was younger, paid less, and had potentially more years of service to give as a teacher." Pl. Mem. at 15. "Employment decisions motivated by characteristics other than age (such as salary and pension benefits), even when such characteristics correlate with age, do not constitute age discrimination." Hanebrink v. Brown Shoe

Co., 110 F.3d 644, 647 (8th Cir. 1997) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993)). Thus, whether Talmud hired Lifshen as a cost saving move, or because Lifshen had more years of service left in his future, both are non-discriminatory reasons on which to base employment decisions. Though Lifshen personally opposed Blackman's termination, he was never told when he was hired that he was Blackman's replacement, and he did not believe himself to be Blackman's replacement. Lifshen Dep. at 50-51, 59-61.

When a school hires a new teacher and a portion of their course load includes teaching courses once taught by another teacher, declaring that they are a "replacement" for the former teacher is tenuous. By teaching some of Blackman's former classes, Lifshen does function as a replacement for Blackman's former role. However, in many other respects Lifshen's duties bear no correlation to duties performed by Blackman at Talmud. In the context of an alleged discrimination claim, the operative question is whether Lifshen was hired to replace Blackman, such that Blackman was eliminated from the program on the basis of age. Blackman's allegations do not constitute a prima facie showing that he was replaced by a younger teacher.

Even assuming, *arguendo*, that Blackman could establish a prima facie showing of discrimination, Talmud has produced ample rebuttal evidence to show Blackman's employment was terminated for the legitimate, non-discriminatory reason of inadequate performance. Talmud had long been concerned with Blackman's ability to teach younger students. Talmud was receiving complaints from students and parents regarding Blackman's teaching style, and enrollment in his

courses was far below average.[6] Talmud has articulated a non-discriminatory reason for the decision to terminate, and the burden shifts back to Blackman to prove that this reason is merely a pretext.

Blackman alleges pretext on the basis that (1) Talmud did not consistently document the problems Blackman was having or give Blackman adequate notice that Talmud was concerned with his performance, (2) Talmud cannot have truly felt Blackman was a poor teacher because it invited Blackman to come back to teach a Bible class during the 1998-99 school year, and (3) Ettedgui made statements that Blackman alleges indicate pretext. This evidence does not indicate an express animus sufficient to establish a pretext.

Talmud sent Blackman a letter on March 24, 1998, detailing multiple performance concerns and identifying areas in which Talmud "would like to see improvements." Lindeman Aff., Ex. E. In the letter, Ettedgui offered to talk with Blackman about how he could make the suggested improvements. Id. One year later, on March 25, 1999, executive director Meryll Page sat in on one of Blackman's classes and made observation notes. Id., Ex. C. The notes confirm that Blackman's knowledge is "excellent," but catalogue numerous performance concerns regarding Blackman's teaching. Id. Blackman was adequately informed that his performance was a concern to Talmud, and Talmud also made sufficient documentation of the specific performance concerns.

Next, Talmud invited Blackman back to teach during the 1998-99 year, after having already decided not to renew his full-time contract, because a small class size of highly motivated students was believed to be more appropriate for Blackman's skills, as opposed to the full size classroom of

---

[6] Talmud represented at oral argument that while its average class is about 15 students, Blackman's classes only had 3-5 students.

students where Blackman had encountered difficulty. Ettedgui Aff. at 63, 68. The fact of continued employment on a limited basis does not establish that the diminishment of status from full-time to part-time was premised on age discrimination rather than performance deficiencies. Talmud should not be punished for an attempt to try Blackman in a diminished tailored role prior to termination.

Finally, the comments made by Ettedgui are ambiguous and do not show animus. Blackman alleges three statements indicating an age-based animus. First, Blackman alleges Ettedgui stated in October 1998 that: "he is old and I'm old. Times have changed. You can't touch the children the same way as you did before." Lindeman Aff., Ex. C at 52. Second, in a May, 1999, meeting with Ettedgui and others, Ettedgui allegedly stated that: "things had changed. You know, things had changed. We can't speak to the children the same way." Id. at 101, 125. Third, Blackman testified that during the May, 1999, meeting he himself told those present that he was not "ready for pasture." Id. at 101. Blackman argues that the thrust of the comments that times have changed and you cannot teach with the same methods as you could twenty years ago is really the same as saying you are just too old to teach. Blackman argues that the comments made are too general and nebulous to be anything other than age-based. However, the comments relied on by Blackman simply are not sufficient to prove by preponderance of the evidence that Talmud's asserted basis for his termination, that he was no longer effective as a teacher, was merely a pretext for intentional age discrimination.

"[A]n employer has the right to . . . assign work, to change an employee's duties, to refuse to assign a particular job, and to discharge--for good reason, bad reason, or no reason at all, absent intentional . . . discrimination." McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 512 (8th Cir.

1995) (quoting Walker v. AT&T Phone Ctr., Inc., 995 F.2d 846, 849-50 (8th Cir. 1993)). Further, an employer may terminate an employee based on a policy that is "arbitrary, ridiculous and irrational," as long as it does so in an "even-handed, non-discriminatory manner." Smith v. Monsanto Chem. Co., 770 F.2d 719, 723 n.3 (8th Cir. 1985). Talmud's decision to terminate Blackman's employment on the basis of his performance, and/or the financial impact of his employment, was not discriminatory.

Talmud has produced evidence that inadequate performance was the actual basis for the non-renewal of Blackman's contract, while Blackman has produced no evidence to create a question of fact as to whether or not Talmud was engaging in age discrimination. The weakness of Blackman's attempted prima facie case, and the weakness of Blackman's purported showing that Talmud's explanation was merely pretext, necessitate that Talmud's Motion for Summary Judgment on the age discrimination claim be granted. See Dammen, 236 F.3d at 981.

**C. Defamation**

The elements of a common law defamation action are well settled. In order for a statement to be considered defamatory "it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980). Blackman identifies as the basis for his defamation claim the same three alleged statements discussed above in section II at page 4 and section III (B) (ii) at page 11.

Blackman's counsel at oral argument withdrew any defamation claims related to the first statement occurring during the private conversation with Ettedgui, due to the lack of any public

witness present and no publication. The second alleged statement, allegedly made by Ettedgui at a Talmud board meeting where all members present were Talmud employees, is ambiguous and not defamatory. Merely stating that "things had changed" and that "we can't speak to the children the same way" does not meet the requirements for a defamatory statement against Blackman. Such comments are not demonstrably false, and they also do not implicate Blackman's reputation, nor diminish the community's estimation of him.

Finally, and most interestingly, the third allegedly defamatory statement was made by Blackman himself. Blackman told those present at the May, 1999, board meeting that he was "not ready for pasture." Lindeman Aff., Ex. C at 101. Blackman has not alleged, nor is there any evidence, that this self-publication was compelled by Talmud. The content of this comment likewise evinces no harm to Blackman's reputation, and is not capable of proof. As such, this self-published statement can not sustain a claim of defamation.

Given the inadequacy of each of the three allegedly defamatory statements articulated by Blackman, his admittedly "ride-along" defamation claim is without merit. Talmud's Motion for Summary Judgment on Blackman's defamation claim is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Talmud's Motion for Summary Judgment [Doc. No. 14] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: December 5, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd